## MARYLAND DEPARTMENT OF EMPLOYMENT SECURITY *v.* WERNER

[No. 316, September Term, 1962.]

*Decided May 14, 1963.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, HORNEY and SYBERT, JJ.

*James N. Phillips, General Counsel, Maryland Department of Employment Security,* with whom were *Thomas B. Finan, Attorney General, Bernard S. Melnicove, Special Assistant Attorney General,* and *Peter Sfekas, Assistant General Counsel,* on the brief, for the appellant.

No brief and no appearance for the appellee.

HAMMOND, J., delivered the opinion of the Court.

We must decide in this case whether wages actually paid, or wages earned, within a statutory base period control eligibility for unemployment benefits under the Unemployment Insurance Law of Maryland.

Code (1957), Art. 95A, Sec. 4, provides that an individual is eligible for benefits with respect to any week only if, inter alia, "(e) * * * (1) During his base period he has been paid wages for insured work * * *" of a specified amount, calculated in a certain manner, and "(2) During that calendar quarter of his base period in which his total wages were highest, he has been paid for insured work at least * * *" a stated minimum amount. Sec. 20 says:

> "As used in this article, unless the context clearly requires otherwise:
>
> "(a) *'Base period'* means the first four of the last five completed calendar quarters immediately preceding the commencement of the benefit year as defined in subsection (q) of this section * * *."

On January 11, 1962, Cecil E. Werner, the appellee, filed a claim for unemployment compensation benefits for the benefit year beginning January 6, 1962. His claim was denied by a

claim specialist on the ground that the wages paid him for insured work during the qualifying base period—the first four of the last five completed calendar quarters preceding the start of the benefit year (from October 1, 1960 to September 30, 1961) —were insufficient.

The denial was appealed, and there was a hearing before an appeals referee at which there was shown that Werner had been paid wages of $605.00 in the fourth quarter of 1960 and of $124.95 in the third quarter of 1961. Under the specifications of Sec. 3 (b) and Sec. 4 (e) of Art. 95A, a claimant who has been paid between $600.01 and $624.00 in wages during the highest quarter of his base period must also have been paid a total of at least $828.00 in wages during the entire base period in order to be qualified to receive benefits. Werner showed he had earned $842.65 during the entire base period; but because his wages of $112.70 earned for the week ending September 30, 1961, were not paid to him until October 5, 1961, he actually received only $729.95 during the base period.

The appeals referee affirmed the claim specialist, and the Board of Appeals of the Department of Employment Security upheld the referee. Werner appealed to the Circuit Court for Garrett County. Judge Hamill held that since the Unemployment Insurance Law was remedial and intended to prevent economic insecurity and alleviate the consequences of involuntary unemployment and economic distress, it should be construed in such a way as to accomplish the purposes of the Legislature and that it would not seem a proper construction, to these ends, to deny eligibility merely because wages earned during the base period were not paid within the period.

We are constrained to disagree with Judge Hamill's views, finding a clear legislative intent to the contrary, unambiguously expressed, an intent buttressed by the legislative history of Art. 95A of the Code, and one competent to serve as a basis for legislative action.

When what is now Sec. 4 (e) of Art. 95A was first enacted as a part of Ch. 1 of the Laws of the Extraordinary (December) Session of 1936, it required that the claimant, to be eligible for benefits, have "earned wages of not less than sixteen times his weekly benefit amount." The law was amended by

Ch. 17 and Ch. 385 of the Laws of 1941 to substitute, among other things not immediately relevant, the word "paid" for the word "earned."

Ch. 17 of the Laws of 1941 also amended what is now Sec. 8 (a) of Art. 95A (then 7 (a)) so that it read as follows:

> "On and after January 1, 1936, contributions shall accrue and become payable by each employer for each calendar year in which he is subject to this Act, with respect to wages payable for employment for the years 1936, 1937, 1938, 1939 and 1940, and upon wages paid with respect to employment after December 31, 1940. Such contributions shall become due and be paid by each employer * * * as the Board may prescribe * * *."

The plain purpose of the Legislature to make the payment rather than the earning of wages the test is further shown in Ch. 17 of the Laws of 1941. Sec. 20 thereof (now Sec. 21 of Art. 95A) was enacted to read as follows:

> "Wages payable to an individual for insured work performed prior to January 1, 1941, shall, for the purposes of §§ 3 (b) (1), 3 (c), and 4 (e) of the Unemployment Compensation Law, as amended by this Act, be deemed to be wages paid within the calendar quarter with respect to which such wages were payable."

The brief of the Maryland Department of Employment Security sets forth this information:

> "For the past twenty-two years the Department has interpreted the statute as requiring that wages are to be credited when 'paid' for the purposes of maintaining its records and administering the Act.
> "The Department maintains wage records on approximately 55,000 employers and 850,000 workers. This represents over 4,000,000 separate IBM earning cards which must be maintained for the past five quarters.

"As a matter of administrative feasibility, if the Department were to credit wages when earned, it would be necessary in every instance where the claimant qualified for less than the maximum amount of benefits to contact his employer to determine from his payroll records when each dollar of wages was actually earned. Needless to say, this would not only delay the payment of benefits, but it would also impose a great, if not impossible burden on the Department and on every employer.

"This was the very reason that impelled the amendments of 1941."

If, as the Department suggests, the Legislature, in requiring that wages are to be credited for qualification for benefits only when paid, had in mind the requirements of administrative feasibility, if not practical possibility, this would not make the legislative requirement improper or invalid.

Much of the making and interpreting of law is the drawing of lines, and the legislative body often must do the drawing. In *Carmichael v. Southern Coal & Coke Co.*, 301 U. S. 495, 81 L. Ed. 1245, the Supreme Court, in upholding the constitutionality of a State unemployment insurance act which applied only to employers of eight or more employees, said the line drawn by the Legislature between those having seven employees and those having eight was valid. It added: "Administrative convenience and expense in the collection or measurement of the tax are alone a sufficient justification for the difference between the treatment of small incomes or small taxpayers and that meted out to others", citing many cases. The Court said further: "Administrative considerations may explain several exemptions. Relatively great expense and inconvenience of collection may justify the exemption from taxation of domestic employers, farmers and family businesses, not likely to maintain adequate employment records, which are an important aid in the collection and verification of the tax."

Maryland's requirement that wages be paid if they are to serve as a basis for eligibility is found in the laws of other jurisdictions, and courts elsewhere have interpreted it as do we.

81 C.J.S. *Social Security and Public Welfare*, Sec. 246, pp. 360-361 ("In determining to which quarter of the base year wages are to be allocated, the actual date when wages are paid pursuant to a definitely assigned pay roll period controls rather than when such wages are earned."). See *In re Storch*, 103 N. Y. S. 2d 35; *Chapple v. Corsi*, 92 N. Y. S. 2d 741. See also *Levine v. Ribicoff*, 201 F. Supp. 692 (involving the provision of the Federal Social Security Act that wages be paid).

The view we take of the law calls for a reversal of the order of court appealed from and an affirmance of the Unemployment Security Board.

> *Order of the Circuit Court for Garrett County reversed and order of the Maryland Department of Employment Security, which disqualified Cecil E. Werner from receiving benefits, affirmed; costs shall be paid by the Department, appellant.*