21833

E. Marvin PULLIAM, Respondent, v. W. Marshall COMER, Chairman, South Carolina Employment Security Commission; South Carolina Employment Security Commission and Anderson School District #5, Defendants, of whom W. Marshall Comer, Chairman, South Carolina Employment Security Commission and South Carolina Employment Security Commission are, Appellants.

(298 S. E. (2d) 775)

*William H. Griffin* and *Karl H. Smith,* Columbia, *for appellants.*

*Thomas L. Bruce,* Greenville, *for respondent.*

Dec. 21, 1982.

GREGORY, Justice:

Respondent Marvin Pulliam brought this action seeking unemployment compensation. The South Carolina Employment Security Commission (Commission) denied respondent benefits. On appeal the circuit court reversed the Commission's decision and awarded benefits. We agree with the Commission, reverse the circuit court, and deny respondent compensation.

Respondent was employed as a public school teacher in Anderson County from November 1, 1976, through June 15, 1977. His employment was not continued after the end of that school year because the federal funds for his program had expired.

At that time teachers were exempted from receiving unemployment compensation, S. C. Code Ann. § 41-27-260 (11)(c) (1976), so respondent applied for and received funds from the Special Unemployment Assistance Program (SUA) until February 11, 1978.

Act No. 161(2) of 1977, effective January 1, 1978, amended § 41-27-230 of the Code so as to make public school teachers, among others, eligible for unemployment compensation benefits. On February 12, 1978, Pulliam applied for benefits. They were denied because the claims adjudicator and the Commission, applying § 41-27-310 of the Code, found Pulliam ineligible due to insufficient insured wages.[1]

Section 41-27-310 of the Code provides in pertinent part:

> An *"insured worker"* is an individual who has been paid wages in his base period for insured work equal to or exceeding one and one-half times the total of his wages paid in the quarter of such base period in which his wages for insured work were highest . . .

---

[1] Respondent's wages for his base period were:

| | |
|---|---|
| 4th quarter 1976 | $1970.17 |
| 1st quarter 1977 | 2936.91 |
| 2nd quarter 1977 | 3609.57 |
| 3rd quarter 1977 | 528.00 |

The wages for the 4th quarter 1976 and 1st quarter 1977 were not available for determining Pulliam's eligibility because they had been used for his SUA benefits.

Appellant contends the language of the statute is plain and unambiguous and discloses a clear legislative intent that the date wages are actually paid during the statutory base period controls eligibility for benefits.

The legislative history supports this interpretation. ■ Act No. 946 of 1936, which created the system of unemployment compensation in South Carolina, provided that benefits were based on a claimant's "hourly rate of earnings" multiplied by his "full-time weekly hours." Act No. 316 of 1939 amended Act No. 946 and provided that an unemployed individual was eligible only if "he has during his base period *earned wages* for insured work . . ." (Emphasis added). Act No. 255 of 1941 amended Act No. 316 by replacing "has . . . earned wages" with "has . . . been paid wages." This amendment leaves no doubt that the Commission must use the actual date wages are paid to determine whether or not a claimant is eligible.

In *Employment Security Division of Arkansas v. Hubbard,* 266 Ark. 725, 587 S. W. (2d) 835 (1979) and *Maryland Department of Employment Security v. Werner,* 231 Md. 474, 190 A (2d) 786 (1963), the date wages were actually paid rather than the date wages were earned controls eligibility for unemployment benefits. Both courts considered administrative feasibility as a valid purpose for the legislative requirement that wages be credited for qualification for benefits only when paid:

> As a matter of administrative feasibility, if the Department were to credit wages when earned, it would be necessary in every instance where the claimant qualified for less than the maximum amount of benefits to contact his employer to determine from his payroll record when each dollar of wages was actually earned. Needless to say, this would not only delay the payment of benefits, but it would also impose a great, if not impossible burden on the Department and on every employer.

*Employment Security Division of Arkansas,* supra, at 836, quoting *Maryland Department of Employment Security,* supra.

Here we are asked to distribute over four quarters wages actually earned and paid in three quarters. In *Employment*

*Security Division of Arkansas,* supra, and *Maryland Department of Employment Security,* supra, the issue concerned wages actually earned in one quarter but paid in a later quarter. However, if the legislative purpose behind § 41-27-310 of the Code is administrative feasibility, we agree with those cases that this would not be an invalid purpose.

In 1979, the Commission maintained wage records on an average monthly employment force of 1,109,099 workers and 56,686 employment units. South Carolina Employment Security Commission, *Covered Employment and Wages in South Carolina,* 1979 (1980). It would be expensive, burdensome, and unreasonable to examine each claimant's wage record to make a determination the circuit court's order would require.

Pulliam contends § 41-27-310 of the Code violates equal protection in that it discriminates against teachers who are paid in nine month installments and in favor of teachers paid in twelve month installments.[2] The circuit court agreed, concluding a teacher paid in nine months, though his work and extent of service is identical to a teacher paid in twelve months, would not receive unemployment benefits because three of his four quarters would be inflated at the expense of his fourth. Simple arithmetic demonstrates otherwise.

The reason for respondent's ineligibility is the unavailability of the first two quarters of his base period which were used for SUA benefits. Had he been able to use all four quarters, he would have been eligible for benefits. Our calculations show a teacher hired for nine months and paid in nine months ordinarily would be eligible. Thus, respondent's contention that the statute discriminates against teachers paid in nine months proves wrong.

The existence of similarly situated persons is a logical precondition for a violation of equal protection. Contrary to respondent's position and the holding of the circuit court, teachers paid on a nine month basis are not discriminated against by § 41-27-310 of the Code. Respondent has not shown the existence of similarly situated persons. We find no violation of equal protection.

---

[2] In some counties teachers can elect whether to be paid in nine months or twelve months although they actually work only nine months of the year.

Accordingly, we reverse the order of the circuit court and deny respondent unemployment compensation.

Reversed.

LEWIS, C.J., and LITTLEJOHN, NESS and HARWELL, JJ., concur.